### SPRAGUE CANNING MACHINERY CO. v. FULLER.

(Circuit Court of Appeals, Fifth Circuit. January 7, 1908.)

#### No. 1,737.

1. SALES—PAYMENT OF PRICE—CONCURRENT CONDITIONS—PASSING TITLE—RECLAMATION OF PROPERTY.

Where personal property is sold for cash on delivery, the payment stipulated for is a condition precedent to the passing of title, and, unless made, the seller may reclaim the property, under the rule that where the buyer is bound to do anything as a condition precedent or concurrent, on which the passing of title depends, the title will not pass until the condition is fulfilled, though the goods may have been delivered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 542, 892.]

2. BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—DELIVERY UNDER SALE CONTRACT.

Machinery was sold and shipped to a corporation, to be paid for on delivery. The corporation's president obtained possession from the carrier on his promise to send a check, which was not done. Thereafter the president admitting that the machinery belonged to the seller, took a lease thereof for a year, which provided for the making of certain payments, denominated rentals, which equalled the contract price, with interest, the seller agreeing on payment of the entire rental to execute a bill of sale for the machinery; the seller taking negotiable vouchers to secure such rentals, which were not paid prior to the corporation becoming a bankrupt. Held, that the title to the machinery did not pass to the corporation or its trustee in bankruptcy.

3. CORPORATIONS—AUTHORITY OF OFFICERS.

Where a corporation's president obtained possession of machinery purchased for it, without complying with the condition precedent providing for payment of price on delivery, and thereafter the president admitting that the title to the machinery was in the seller, accepted a lease thereof from the seller to the corporation, the latter could not deny the president's authority so to act, and at the same time claim title to the property on account of the prior transactions with him.

4. BANKRUPTCY—SUPERINTENDENCE AND REVISION—JUDGMENT.

Where a court of bankruptcy erred in dismissing a claim for the return of personal property delivered to a bankrupt corporation, the Circuit Court of Appeals, in the exercise of its power to superintend and revise, would reverse the order, and by its own order require the bankrupt's trustee or receiver to surrender the property.

Petition to Superintend and Revise from the District Court of the United States for the Northern District of Alabama.

For opinion of District Court, see 155 Fed. 372.

Milton Humes and Paul Speake, for petitioner.

S. S. Pleasants and Oliver D. Street, for respondent.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. The respondent represents the Cullman Fruit & Produce Association, a private corporation, adjudged bankrupt. The bankrupt is an Alabama corporation, its plant and place of business being at Cullman in that state. Among other general purposes of the corporation, its business was to purchase, ship, and sell fruits and produce. L. A. Fealy was general manager of the association, and, as such manager, authorized and required to attend to all the business of the association. The proof shows that he claimed to have, under the by-laws, power to carry on all kinds of business in which the corporation engaged, and that he was the largest stockholder in the concern, and virtually owned the business. The Sprague Canning Machinery Company, the petitioner, is a corporation organized under the laws of Illinois. Its principal business is the manufacture and sale of canning machinery, embracing machinery for the canning of fruit and vegetables. On May 14, 1906, using the forms adopted by it, it entered an order on behalf of the bankrupt corporation for certain machinery, specified in the order, with this stipulation:

"All the above goods for delivery f. o. b. cars Hoopston, Ill., June 1, 1906, for the sum of $1,300.00 cash; settlement to be made by your payment of our ten days' sight draft made at the time of shipment with bill of lading attached."

The machinery was shipped June 6th with draft attached to the bill of lading. On June 21st, L. A. Fealy, manager of the Cullman Association, wrote the petitioner: "We do not care to pay exchange on drafts, and if you will release draft we will send check for amount due on machinery;" and on June 26th sent petitioner a telegram in these words: "Release car. Will send check." Acting on the promise to send the check, the petitioner instructed the railroad to let the Cullman Association have the goods, which the railroad did. The check was not sent, and no money was then or ever afterwards paid on the goods.

On August 1st, H. O. Crane, treasurer of the petitioner company, went in person to Cullman, Ala., and saw Mr. Fealy, president and manager of the Cullman Association, and demanded the machinery or the money, which had been promised for it, when Mr. Fealy acknowledged that the machinery belonged to the petitioner company, but explained that they were just beginning to put up their goods; that he had not the money then, but would have it in a few days; and such

negotiations were had that the petitioner allowed the Cullman Association to retain and use the machinery for a time under an arrangement by which the money was to be paid part on the 15th of August and the rest on September 1st. The payments were not made. About the 4th or 5th of September, C. F. Colbert, a representative of the petitioner, went to Cullman, saw the president and manager of the Cullman Association, and demanded a settlement as per previous agreement, or he would remove the machinery from the building and ship it back to Hoopston, the petitioner's factory. They went out to the Cullman factory together, and identified the machinery to be taken back, all of which Colbert claimed as still belonging to the petitioner company, and the manager of the Cullman Association admitted that it did. Such negotiations were then had that the petitioner corporation executed a lease, giving the property on lease contract to the Cullman Fruit & Produce Association for one year, providing for certain payments to be made the 1st of October, 1906, May 15, 1907, and October 1, 1907, aggregating the price of the machinery, and stipulating that in the event of failure to pay any installment the entire amount shall become due immediately, etc.; and, further, "that upon payment of the entire rental, together with interest, the party of the first part shall execute a good and sufficient bill of sale to the party of the second part for the aforesaid machinery." This instrument was dated September 7, 1906. None of the payments were made. On the 27th of February, 1907, a petition was filed in the proper court by creditors seeking to have the Cullman Association adjudged a bankrupt; and the respondent was appointed receiver of its estate. On the 19th of July, 1907, the petitioner applied to the court for an order requiring the respondent as trustee or receiver to surrender full possession of the property to the petitioner. Thereupon such proceedings were had that the court ordered that the petitioner's application be dismissed.

It is contended for the respondent that the transactions had on and prior to the 1st of August, 1906, vested the absolute title to the machinery in the Cullman Association, and that there can be no reclamation of it by the petitioner under the lease or conditional sale contract executed the 7th of September, 1906, for the reason that the title having vested absolutely in the Cullman Association the lease bearing date of September 7th could have no force for reinvesting the title in the Sprague Company, because it does not purport to be, and is not in fact, an instrument seeking to convey the title from the Cullman Association to the Sprague Company, and if the lease or conditional sale contract were an instrument purporting and seeking to convey the title of the Cullman Association to the Sprague Company, it could not be effective, because not executed by authority of the corporation. We concur with the learned District Judge in the opening sentence of the opinion he delivered in this case that "the first question which confronts us, and indeed the controlling and decisive question is, did the title to the property in fact and in law ever pass from the Sprague Canning Machinery Company into the Cullman Fruit & Produce Association?" And we also concur in the contention urged by counsel for the petitioner, as stated by the learned judge, "that the whole transaction from start to finish shows an intention not to part with the ti-

tle until the purchase price was paid." In considering these propositions, we have to bear in mind that the respondent has no other title than the title which the bankrupt had. The respondent, in his answer in the District Court, refers to a deed of trust executed the 1st of July, 1905, by the Cullman Fruit & Produce Association to secure an issue of bonds covering all and singular the property of the company theretofore acquired and thereafter to be acquired, and the manufacturing buildings and plant of the company in the city of Cullman, state of Alabama, and alleges that the property in this case involved became fixed upon and attached to the mortgaged property prior to the execution of the instrument referred to in the pleadings as the lease contract of date September 7, 1906. This suggestion of the answer does not appear to be urged in the printed brief filed by counsel for the respondent in this court, and the learned judge of the District Court refers to it only in these words:

"Then, if that lease should be construed as a valid lien upon the property of the bankrupt, it would not now at this time be necessary for this court to pass upon the effects of that lien in its relation to the mortgage given to secure the payment of the bonds."

The learned judge also says that "at the time of the acceptance of these vouchers and bonds by the Sprague Company the property was in the possession of the Cullman Association at Cullman, Alabama, and was in use as a part of its canning factory, being attached to the building by pipes." We have carefully examined the proof bearing upon the matter of the attachment of the Sprague machinery to the other plant of the Cullman Company, and we are clear in our conclusion that the connection made was not such as to complicate or affect, in any respect, the question of the ownership, as between the Sprague Company and the Cullman Association, of the canning machinery here claimed.

We concur with the learned District Judge that "there is no doubt about the proposition that, where personalty is sold for cash on delivery, the payment stipulated for is a condition precedent, and, unless complied, the seller may reclaim the property." We think it is settled law that " 'where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer.' Benjamin on Sales (3d Ed.) § 320." And it has been held by controlling authority that, where goods were sold to be paid for in cash or securities on delivery, "the sales were conditional only, and that the vendors were entitled to retake the goods, even after delivery, if the condition was not performed, the delivery being considered as conditional." "Where no fraud is intended, but the honest purpose of the parties is that the vendee shall not have the ownership of the goods until he has paid for them, there is no general principle of law to prevent their purpose from having effect." Harkness v. Russell, 118 U. S. 667, 7 Sup. Ct. 51, 30 L. Ed. 285. We quote further from the same opinion:

"Whatever the law may be with regard to a bona fide purchaser from the vendee in a conditional sale, there is a circumstance in the present case which

makes it clear of all difficulty. The appellant in the present case was not a bona fide purchaser without notice. The court below find that at the time of and prior to the sale he knew the purchase price of the property had not been paid, and that Russell & Co. claimed title thereto until such payment was made. Under such circumstances, it is almost the unanimous opinion of all the courts that he cannot hold the property as against the true owner. * * * It is only necessary to add that there is nothing either in the statute or adjudged law of Idaho to prevent, in this case, the operation of the general rule, which we consider to be established by overwhelming authority, namely, that in the absence of fraud, an agreement for a conditional sale is good and valid, as well against third persons as against the parties to the transaction; and the further rule that a bailee of personal property cannot convey the title. or subject it to execution for his own debts, until the condition on which the agreement to sell was made has been performed." 118 U. S. 681, 7 Sup. Ct. 60 (30 L. Ed. 285).

From the 6th of June, when these goods were shipped, to the 7th of September, when the writing called "lease contract" passed between the parties, a period of only three months, there is not an instant when the parties came in sight that the Sprague Company is not claiming title to this property, and that the president and manager of the Cullman Association is not fully and clearly recognizing the Sprague Company's title thereto. The shipment was made at the beginning of the canning season, the original conditional delivery was made upon a misrepresentation, not, indeed, constituting a moral fraud, but to give the delivery the effect of waiving the condition precedent would, under the circumstances, work a legal fraud on the seller. The conditions were substantially the same the 1st of August, and the claim of title and property continued to be clearly asserted on the one part, and as clearly recognized on the other; and under circumstances and conditions which operated no fraud upon anybody, and especially no fraud upon the purchaser, it was allowed temporarily to use the machinery on the promise and in the expectation of its being able to pay the price within a month, and on the constantly expressed readiness to always acknowledge, and to give any written evidence that might be desired of the fact, that the machinery remained the property of the Sprague Company until it was paid for. The taking of the orders on the company's treasury—call them vouchers or drafts, or what you will —and of bonds of the company as collateral security, worked no imposition on the Cullman Association, and had in fact no element of waiver of the condition precedent and concurrent, so far as that company was or could be affected by it; and then as to the writing that was executed the 7th day of September, whether we call it a lease or an instrument of conditional sale, whether it was executed or accepted by the president and manager of the Cullman Association, with or without specific authority from the board of directors to execute or accept a lease, it does assume, and, to our minds, conclusively shows that, at that date and between the parties, the fact was clearly recognized. that this canning machinery belonged to the Sprague Company, and was to so belong to it until the price was paid in a specified time, and that if default was made in the payment that company had the right to remove the property. The Cullman Association cannot question the. president and manager's authority to act in these matters as he did, and at the same time claim title to the property on account of the trans-.

actions with him. After the original order, and certainly after the shipment of the goods to Cullman, all of the transactions with reference to these goods were had with Fealy, president and manager; and it is difficult to see, in connection with these transactions, a different party from the individual who was conducting them, and to let in, for the benefit of this different party, a waiver which the individual negotiator not only has never claimed, but has constantly disclaimed.

We conclude that the court of bankruptcy erred in dismissing petitioner's claim, and, in the exercise of our power to superintendent and revise, we reverse the action of the District Court, and here enter our order requiring and commanding respondent, as trustee or receiver, to surrender the possession of the property described to the petitioner, adjudging the costs against the estate of the bankrupt.

SHELBY, Circuit Judge, took no part in the decision of this case.