## In re PERPALL.

(Circuit Court of Appeals, Second Circuit. February 13, 1919.)

### No. 115.

1. SALES ⚷218½—CASH SALE—EVIDENCE.

   Evidence that the seller's messenger delivered a bond to a broker, and that another messenger called for the purchase price within a few hours after giving the broker time to make the check according to the usual business custom, *held* to sustain a finding that title did not pass until payment.

2. SALES ⚷202(8)—CASH SALE—WAIVING PAYMENT.

   An apparently unrestricted delivery of goods sold for cash presumably waives the condition that payment is necessary to pass title.

3. SALES ⚷218½—JURY·QUESTION—WAIVING PAYMENT.

   Whether the condition that payment is required to pass title to goods sold has been waived is a jury question, especially where the rights of third parties have not intervened.

4. SALES ⚷202(8)—PASSING TITLE—WAIVING PAYMENT.

   The seller of a bond did not waive payment as a condition precedent to passing title, where his messenger delivered the bond to a broker and another messenger, according to the usual business custom, called to receive payment a few hours later, after allowing time for the broker to make entries, execute a check, etc.

5. PAYMENT ⚷22—PAYMENT BY CHECK—RETAKING GOODS.

   Accepting a buyer's check does not ordinarily operate as payment, so as to prevent the seller from retaking the goods, if the check is not paid.

Petition to Revise Order of and Appeal from the District Court of the United States for the Southern District of New York.

Petition by Louis R. Hammerslough for reclamation of certain property from Ezra P. Prentice, as receiver in bankruptcy of Clarence C. Perpall. Order for claimant, and said receiver brings a petition to revise and also appeals. Affirmed.

The claimant, Louis R. Hammerslough, brought his petition for the reclamation from the receiver of Clarence C. Perpall, doing business under the name of Clarence C. Perpall & Co., bankrupt, of one first-mortgage 30-year Seattle-Everett 5 per cent. gold bond, due 1939, of the par value of $1,000, and numbered 1324.

The referee in bankruptcy reported that the claimant was entitled to the bond in controversy, and this report was confirmed by the District Court, which made an appropriate order directing that the claimant recover the said bond with the attached coupons. From the order so made the receiver·in bankruptcy brought his petition to revise and also his appeal. The two proceedings have been consolidated in this court.

---

⚷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Prior to his failure the bankrupt was a member of the Consolidated Stock Exchange, while the claimant, who was a dealer in securities, carried on his transactions through the firm of E. Bunge & Co. Upon Saturday, June 29, 1918, the bankrupt had a conversation over the telephone with the claimant, the result of which was that the claimant agreed to sell and the bankrupt agreed to buy the bond in question at the price of 75¼ per cent. plus accrued interest, the transaction to be closed upon the following Monday, July 1st.

In the afternoon of that day the cashier of E. Bunge & Co. gave the bond, together with a memorandum of sale from E. Bunge & Co. to the bankrupt, to one of the Bunge firm's messenger boys. The boy carried the bond, with the memorandum attached, to the office of the bankrupt, where it was delivered to the cashier; the boy continuing on his way for the purpose of making other deliveries of securities. It appears to be the practice in the financial district for deliveries to be made in this manner; the boy again calling at the offices at which he has made deliveries for the purpose of receiving checks in payment for the securities previously delivered. This practice is followed, to the end that business may be expedited, and to permit the firms receiving securities to make comparisons, appropriate book entries, and draw the checks. Accordingly a messenger from E. Bunge & Co. again called at the cashier's window of the bankrupt and received a check drawn by the bankrupt upon the Continental Bank and in favor of E. Bunge & Co. in the sum of $769.17, the purchase price of the bond plus accrued interest. This check was taken to the office of E. Bunge & Co., and that firm immediately deposited the same to its credit in the Continental Bank. At 2:40 p. m. of July 1, 1918, the suspension of the bankrupt was announced from the rostrum of the Consolidated Stock Exchange. Upon learning of this announcement, E. Bunge & Co. demanded of the Continental Bank the payment of the check or its certification. Neither of the demands was met, and the check was returned by the bank to E. Bunge & Co.

The testimony before the referee established that the Bunge check was the last check drawn and delivered by the Perpall concern prior to its suspension, and the testimony also established that when the check was drawn and delivered the account of Perpall was largely overdrawn. Following the suspension above referred to, an involuntary petition in bankruptcy was filed against Clarence C. Perpall, doing business under the name of Clarence C. Perpall & Co. An adjudication followed in due course, and in the meanwhile Ezra P. Prentice was appointed and qualified as the receiver of the bankrupt, and as such came into the possession of the bond in question as a part of the bankrupt's assets.

Rosenberg & Ball, of New York City (David W. Kahn, of New York City, of counsel), for appellant.

Samuel Fleischman, of New York City, for respondent.

Before ROGERS and MANTON, Circuit Judges, and KNOX, District Judge.

KNOX, District Judge (after stating the facts as above). In the case of Empire State Type Founding Co. v. Grant, 114 N. Y. 40, 21 N. E. 40, it was held that, where a contract for the sale of personal property does not provide, in express terms, that payment shall be made on delivery, or that payment and delivery shall not be concurrent, the intent of the parties must control, and if from the acts of the parties and the surrounding circumstances it can be inferred that it was intended that payment and delivery should be concurrent acts, the title will be deemed to have remained in the vendor until the condition of payment is complied with. The court in that case also concluded that the question of intent in such case is one of fact.

[1] Upon the facts now under consideration, the referee, before

whom the testimony was taken, has found that the sale of the bond in question was for cash or the equivalent of cash upon delivery; in other words, it has been resolved as a question of fact that before title to the bond should pass to the bankrupt there was the necessity of the performance by him of the condition precedent of payment. We believe this finding of the referee to be entirely justified by the evidence.

[2, 3] It therefore remains to be determined if the delivery of the bond to the cashier of the bankrupt in the manner shown by our recital of the facts constituted a waiver upon the part of the claimant of the condition of payment. Unquestionably it lay within the power of the vendor to waive any condition imposed by him in his original contract, and we also realize that an apparently unrestricted and unconditional delivery of goods sold for cash is presumptive evidence of the waiver of the condition that payment should be made on delivery in order to vest the title in the purchaser. Scudder v. Bradbury, 106 Mass. 422; Hammett v. Linneman, 48 N. Y. 399; Smith v. Lynes, 5 N. Y. 41. Nevertheless, whether or not there has been a waiver of the condition is a question for the jury, and this is particularly true when the rights of third persons have not intervened. Mechem on Sales, § 549, and cases referred to in footnote.

[4] The transaction in the case at bar was along lines and in accord with practices well known and understood in the financial district of this community. As has been shown, the bankrupt was a member of the Consolidated Stock Exchange, while the claimant was formerly a member of the New York Stock Exchange, and his agents, E. Bunge & Co., were what are known as "outside brokers"; that is, dealers in securities not listed upon the local stock exchange. It would seem to follow, at least in the absence of any proof to the contrary, that the sale of the Seattle-Everett bond was made subject to the customs and practices obtaining among dealers in securities within the financial district. Now, what happened here was this: The sale of the bond was made upon Saturday, June 29th, and the sale under the custom "carried" until Monday, July 1st; that is to say, the bond was deliverable upon Monday for cash or its equivalent, and upon Monday E. Bunge & Co., through one of their messengers, did deliver the bond to the cashier of the bankrupt. Before drawing a check for the purchase price of the bond, it was necessary for the cashier to make his comparisons and his blotter entries, whereupon he would draw the check and deliver the same to Bunge & Co.'s messenger. Instead of waiting in the office of the bankrupt for these details to be attended to, the messenger occupied the time in making other deliveries, and later another messenger of the Bunge firm called to pick up the check which, when he reached the bankrupt's office, was awaiting him.

In view of the finding of the referee as to terms of sale, we believe that the facts incident to the delivery of the bond fall short of constituting a waiver of the condition of payment. From the circumstances here present, no intent or purpose to extend credit to the bankrupt arises. The claimant is in no worse position than he would have been in, had the messenger idled away his time in the office of the bankrupt while waiting for the details of making the entries and drawing

the check to be completed. Had he remained there, he would have been entitled to receive a check that would be the equivalent of cash, and that was what he was entitled to receive when, in the regular course of business, he or his substitute returned to the bankrupt's office. As is said by Mr. Mechem, at section 551 of his work on Sales:

"There is always an implied understanding that the vendee is acting honestly and that he takes the goods subject to the contract. It is not necessary, therefore, that the vendor shall in express terms declare that he makes the delivery conditional; it is sufficient if the intent of the parties that the delivery is conditional can be inferred from their acts and the circumstances of the case."

The above conclusions, as applicable to the facts before us, we consider to be supported by Empire State Type Founding Co. v. Grant, 114 N. Y. 40, 43, 21 N. E. 40; Sprague Canning Machinery Co. v. Fuller, 158 Fed. 588, 86 C. C. A. 46, 20 Am. Bankr. Rep. 157; In re Pittsburgh Industrial Iron Works (D. C.) 179 Fed. 151, 25 Am. Bankr. Rep. 221, 225. The referee has found upon entirely satisfactory evidence that there was no waiver here.

[5] It has previously been said that when the bankrupt drew his check for the purchase price of the bond his account was largely overdrawn, and the bank dishonored the check upon a demand for its certification or payment. The claimant, therefore, never received that which, as a condition precedent to the passing of title to the bond, the bankrupt had agreed to give him; and taking a check of the buyer does not ordinarily operate as payment, to prevent the seller from retaking the goods if the check is not paid. Nat. Bank v. Railroad Co., 44 Minn. 224, 46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. Rep. 566. So as to the buyer's note. Davison v. Davis, 125 U. S. 90, 8 Sup. Ct. 825, 31 L. Ed. 635. Where such prepayment is the express condition of the sale, there is no doubt that the vendor could retake the goods from the vendee, if the condition is not performed. Barrett v. Pritchard, 2 Pick. (Mass.) 512, 13 Am. Dec. 449.

The order appealed from is affirmed.