PYRENE MANUFACTURING COMPANY

*vs.*

HENRY E. BURNELL AND CHARLES W. GEROW.

Cumberland.    Opinion February 5, 1929.

504

*Thaxter, White and Willey,* for plaintiff.
*Jacob H. Berman,*
*Edward J. Berman,*
*Frank P. Preti,*
*Forrest E. Richardson,* for defendants.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, PATTANGALL, JJ.

BARNES, J. In this case evidence for the plaintiff, stipulations of counsel and exhibits were introduced, and the same was reported that the Law Court may render such judgment as it deems meet and proper upon so much of the evidence as is legally admissible.

From the record we find in uncontradicted evidence or from agreement of the parties that the plaintiff, a corporation whose place of business is in Newark, in the State of New Jersey, for more than a year before the negotiations under review were conducted, had furnished merchandise to United Motor Accessories Stores, Inc., hereinafter for brevity called the vendee, a corporation retailing motor accessories in Portland, in this State:

That on the 9th day of September, 1927, a sales representative of the plaintiff conferred with the vendee, at its place of business about selling to it a supply of merchandise, mainly tire chains, aggregating in value the sum of $5,251.45:

That the officials with whom plaintiff's representative conferred were Albert E. Spiers, treasurer, and James E. Spiers, vice-president of the vendee:

That the vendee desired terms, other than cash on delivery:

That representations of the condition of the vendee, as to financial ability, were made by both officials, comparison of its standing then with that of the year before when one consignment of goods of the value of $5,000.00 had been sold it by the plaintiff, through the same representative, with other sales of lesser magnitude, and proposals and discussion of terms were had:

That the vice-president prepared a list of the articles desired; the sales representative informed him plaintiff would not authorize the desired sale unless vendee were able to take care of its payments more promptly than theretofore, and the vice-president represented that vendee was in a much healthier condition than in the previous season, and would be more prompt in making payments:

That Mr. Albert Spiers, the treasurer and financial man, was interviewed, as to the standing of the vendee, the unsettled account, and the terms to be presented to plaintiff's credit manager, in Newark, in form as follows — "he advised me of the fact that if I would accept a 30-day and a 60-day note, I believe, they would clean up the old account, and that it would be all right to make this shipment on trade acceptances, to be divided into four parts. I told him that that was entirely with the credit manager at the factory. I asked him if he at that time, or his concern, was any better off financially than they had been in the past, and he informed me of the fact that they were, and that in view of the fact that business was getting better, they would be in a better position to meet these payments more promptly; but he didn't want them to conflict with some other trade acceptances that were coming due in the Spring on some tires that he had purchased.

Q. How was the matter finally left with Mr. Albert Spiers as to the method of payment for these claims?

A. The matter was left that there was some discussion as to how many trade acceptances had been issued that previous year, and Mr. James Spiers, I believe, went to the file and brought out the correspondence relative to the sale that had been made on chains the previous year, and produced correspondence to show that there had been four trade acceptances in the previous sale. Therefore I took the order from Mr. Spiers with the understanding that this would also be divided in four payments on trade acceptances, provided that our credit manager at the factory approved of the transaction."

That the representative reported vendee's proposal by a letter—

"PYRENE MANUFACTURING COMPANY

Date Sept. 9th, 1927

From A. D. Storti
To Eastern Division

Subject United Motor
Attention of Mr. R. B. Dickson          Accessories Inc.
          Mr. R. L. Smith          Portland, Me.

Attached hereto please find a Chain order from the above concern. They are giving this order with the hopes of being able to obtain a similar dating as the one that was extended to them last season such as one fourth of the amount due in January one fourth due in February one fourth due in March and one fourth due in April for which they will sign trade acceptances upon our presentation of same. This order was taken with the understanding that it must be approved by the company as I had no such authority to do same.

A. D. S."

and on October 12, 1927, the goods were shipped from Newark, and delivered without bill of lading at vendee's place of business in Portland on October 20:

That on date of the arrival of the goods in Portland, plaintiff enclosed with a letter to the vendee the bill of lading, together with trade acceptances and invoice, all of which were retained by vendee:

That, following the death of his father on October 5th, the treasurer was absent from vendee's place of business until the 10th when he returned for five days; but on the 15th of October resigned his office and abandoned the business:

That the stock and fixtures of the vendee, including the property described in plaintiff's writ, were attached, October 25, on a writ, ad damnum, $7,500.00, and again on October 26, on a writ, ad damnum, $50,000.00, and left in charge of a keeper:

That on October 28, vendee made an assignment for the benefit of creditors, in proper form and legal:

That the statement of the assignees showed liabilities of vendee as $57,000.00 and assets $23,150.00:

That the goods were replevied on October 29, and are the goods shipped by plaintiff:

That defendants were, at date of attachment, duly qualified deputy sheriffs of the county of Cumberland, and acted by virtue of writs regularly issued out of the Superior and Supreme Courts of that county, and

That if plaintiff fails to show title in itself, or right to retake the goods at the time they were replevied, judgment is to be for the defendants and for the return of the property replevied, damages to be fixed at one dollar.

If goods are sold on credit, upon representations made by the buyer as to his financial condition that are false, and known to be false by the buyer, or are false and based on facts within the knowledge of the buyer or susceptible of knowledge by him; if such representations are received and relied upon by the seller; if he is induced by means of such representations to part with the goods, the seller may rescind the sale and retake the goods, provided the rights of innocent third parties have not intervened. *Jordan* v. *Parker,* 56 Me., 557; *Atlas Shoe Company* v. *Bechard,* 102 Me., 197. Representations as to financial condition must be made to the prospective seller. If false representations are not communicated to the seller, he can not well say he sold the goods in reliance on such false representations, or induced by them.

On this point, we can be assured only from the testimony of Mr. Storti, the sales representative of plaintiff. This testimony has been quoted so far as it relates to the agreement and understanding between the representative of the plaintiff and officials of the vendee, at the time the order was given.

The letter written by Mr. Storti and enclosed with the order is here printed in full.

No other communication from representative to principal is testified to. But over and again the representative testifies that he can not extend credit; that there is a man in the home office who passes upon credits; that orders received at the home office requiring the extending of credit are passed along to the credit manager; and he admits that he did not communicate to anyone in the home office any word of what either official of the vendee had told him about the financial standing of the vendee, unless it be found in the letter

printed here. Three days after date of Mr. Storti's letter, plaintiff writes him thereof, stating that time for payment is allowed, and that vendee is to give trade acceptances. This letter closes, as follows, "We believe these liberal terms should be perfectly satisfactory and enable them to meet all obligations promptly." No inference can be drawn from this letter that the signing of trade acceptance should precede the passing of title.

We find as a fact that plaintiff was not induced to sell by any representations as to financial standing of vendee. There is therefore no occasion to discuss fraudulent motive on the part of officials of the vendee.

But it is urged that title to the goods shipped had not passed from plaintiff on October 25, or 26, the days of attachment by the defendants.

With the order the home office received the single request that payment be by trade acceptances, each of one-fourth the selling price, due at intervals of one month beginning in January of the next year.

The goods were shipped October 12, and an invoice apparently made the next day.

But it was not until October 20 that the invoice, with bill of lading and trade acceptances, prepared by plaintiff, were mailed to the vendee.

The trade acceptances were never signed by the vendee, and plaintiff claims that for this reason the title to the goods never passed.

If sale is for cash, and payment is not made on delivery, the rule is that in the absence of waiver the vendor may assert his title. *Stone* v. *Perry*, 60 Me., 48; *Furniture Co.* v. *Hill*, 87 Me., 17; *Berlaiwsky* v. *Rosenthal*, 104 Me., 62.

But conditions may be agreed upon, and after being made they may be waived. So, if a condition be that payment is to be by note, until the note is given title, does not pass. *Seed* v. *Lord*, 66 Me., 580; *Peabody* v. *Maguire*, 79 Me., 572.

A sale may be upon condition precedent, but if so the condition may be waived, and whether waived or not is a question of fact to be determined from the evidence in the case. *Gorham* v. *Holden*, 79 Me., 317; *Furniture Co.* v. *Hill*, supra.

In the latter case, the court says, "The mere fact of delivery without a performance of the condition of payment is some evidence of a waiver of the condition. In this case there was a delivery of the goods without a performance by the purchaser of the terms and conditions of sale, and, without anything being said about the condition, this was some evidence of a waiver by the plaintiffs of their rights.

"It might be controlled or explained by other circumstances, but we think it was a question for the jury."

If the plaintiff, in complying with proposal of purchase submitted in Mr. Storti's letter of September 9, had intended to make a sale, conditioned on receipt of trade acceptances at the time of delivery, it could readily have availed itself of one of several means of securing them. It should have given some evidence of this intention. Without any action except that entirely in accord with sale for cash on delivery, plaintiff elected to make unconditioned delivery.

Eight days thereafter, trade acceptances, ready for signing by the vendee, were addressed to it and mailed, at Newark.

Before the delivery of the mail the goods had arrived and been placed in stock by the vendee.

If plaintiff originally intended sale on credit, which passes title with delivery, it can not interfere with the possession of the defendants.

If, on the other hand, plaintiff had been merely dilatory in forwarding the trade acceptances, the result is the same. The public was furnished with reason to believe that vendee had title; creditors decided to enforce their right; it must be that plaintiff either decided to extend credit, or by its laches put itself in a position that proves the existence of waiver, in law.

*Judgment for the defendants:*
*For the return of property replevied;*
*For one dollar, as damages.*