Argued September 14; modified November 27, 1934; argued on
rehearing March 5; opinion sustained April 23, 1935

# WEYERHAEUSER TIMBER CO. ET AL. v. FIRST
NATIONAL BANK OF PORTLAND ET AL.

(38 P. (2d) 48, 43 P. (2d) 1078)

*V. V. Pendergrass* and *C. E. Zollinger,* both of Portland (Pendergrass, Roehr & Zollinger, of Portland, on the brief), for appellant First National Bank.

*E. A. Boyrie,* of Portland (Wm. B. Layton, of Portland, on the brief), for appellant Thomas H. Mills.

*W. E. Heidinger,* of Tacoma, Washington (Charles H. Paul, of Longview, Washington, and D. V. Kuykendall, of Klamath Falls, on the brief), for respondents.

BEAN, J. By virtue of the stipulation, this suit is rendered practically a suit in interpleader. The bank asserts that it is entitled to so much of the moneys in the trust fund as is necessary for the repayment of the moneys borrowed from it by the Henry D. Davis Lumber Company and secured by the pledge of these accounts. The receiver asserts a right to the balance remaining in the trust fund, after the satisfaction of the bank's interest therein. Plaintiffs assert a right to receive from the fund the price for which the lumber was sold to the Henry D. Davis Lumber Company, and contend that so long as the lumber remained in transit the right of stoppage in transitu could be asserted by them: 55 C. J. 911, § 893.

At the outset, we are burdened with the thought that an innocent party must suffer a loss. Fraud is not pleaded or suggested in this case on the part of any of the parties. We mention this because some of the cases

cited by appellants involved, and are governed by, the question of fraud.

As a general rule, both at common law and under statutory provisions in some jurisdictions, where the right has not been waived, an unpaid seller, who has parted with the possession of goods to a carrier for transportation to the buyer, may, if the buyer is or becomes insolvent, stop the goods in transit, that is, he may resume possession of the goods so long as they are in the course of transit, and may retain them until payment or tender of the price: 55 C. J. 907, § 889. The right may be exercised by any person who, as between himself and the buyer, may be considered as an unpaid seller: 55 C. J. 910, § 892. There is no particular method required for exercising this right: *Frame v. Oregon Liquor Co.*, 48 Or. 272 (85 P. 1009, 86 P. 791). The right of stoppage in transitu extends not only to the property itself but also extends to the proceeds of the property: 55 C. J. 910, § 891. The right may be asserted not only against an insolvent buyer but also against ordinary purchasers or transferees of the buyer to whom a bill of lading has not been properly transferred, and against an assignee for the benefit of creditors, or a receiver appointed for the estate of the buyer: 55 C. J. 911, § 893.

The right of stoppage in transitu is not terminated until there has been a final delivery of the goods to the vendee or his agent at the place named by the vendee to the vendor as the place of final delivery or ultimate destination of the goods. Delivery at an intermediate point or delivery to a person acting as a carrier or forwarding agent will not terminate the right: *Aguirre v. Parmelee*, 22 Conn. 473; *Markwald v. Creditors*, 7 Cal. 213; *Blackman v. Pierce*, 23 Cal. 508.

Leaving out of consideration, for the present, the shipment to Bremerton, Washington, Parcel 7, by means of a scow, let us notice particularly the arrangements for the shipping and the ultimate destination of the lumber in question. A sample of the order for the lumber in this regard is as follows:

"Portland, Oregon,
Our Order N. 8612-A        Feb. 13, 1932.
To Weyerhaeuser Sales Company, Cargo Department, Tacoma, Wash. Ship to Henry D. Davis Lumber Company, Ship's Tackle Mill Dock, at Longview, Washington.
Send Invoice to Henry D. Davis Lumber Co., Portland, Ore.
When In stock—to load the SS........
Route Vessel *destined to Boston, Mass.* [Italics ours]
Terms 100% advance less 2% discount 15 days.
Price FAS Ship's Tackle Mill Dock, Wash. Where vessel can always lie safely afloat."

■ Then follows the description of the lumber. It will, therefore, be seen that it was understood by the vendors, the plaintiffs, and the vendee, the Henry D. Davis Lumber Company, that after payment therefor, the lumber was to be shipped to its final destination, Boston, Mass., and other places on the Atlantic coast. The plaintiffs were the sellers and have never been paid for the lumber. But little is said in the record in regard to how far the lumber was moved from the mill to the dock. The Henry D. Davis Lumber Company, the vendee, caused the lumber to be consigned to third parties at different points on the Atlantic coast. The plaintiffs, the sellers, were not privy to that arrangement. They did not waive the right to be paid cash "In Exchange for Documents" and were not bound by it, and they

exercised the right of stoppage in transitu against a third party, consignee: *Aguirre v. Parmelee,* supra.

Except in one instance, the bills of lading were not transferred to the bank. There was an assignment made of the account or invoice, but we mention the matter as though a straight bill of lading had been transferred.

■ The Henry D. Davis Lumber Company made up invoices to the government and delivered copies thereof to the bank with a form of assignment, attempting to assign "the within invoices". The bank then loaned the Henry D. Davis Lumber Company a sum of money, taking its unsecured promissory note for the amount with the verbal agreement that the Henry D. Davis Lumber Company would send the original invoices and bills of lading to the Navy Department, endeavor to collect the money, and pay its note to the bank from the proceeds if and when collected. In some instances a copy of the bill of lading was attached to the copy of invoice delivered to the bank, and in others not; in some instances the bill of lading had not even been issued. There was no attempt to assign or transfer the bill of lading or the original bill of lading or the original invoice. The transaction amounted to an equitable assignment: *Island Pond Nat. Bank v. Lacroix,* 104 Vt. 282 (158 Atl. 684) ; *Henry v. Black,* 213 Pa. 620 (63 Atl. 250).

■■ Bills of lading, in a qualified and restricted sense, have the attribute of negotiability and are frequently described as quasi negotiable. But while the transfer of bills of lading will pass the title to the goods, unless the common-law has been modified by statute, these instruments are not negotiable in the sense in which the term is applied to bills and notes and other

negotiable instruments of a like character. And this is so, even when the bill of lading in terms runs to order or assigns. The rights of the parties are not to be determined by the application of rules which control the transfer of commercial paper. Although it has sometimes been said that a bill of lading is negotiable, nothing more is meant by this than that the transfer of the bill of lading passes to the transferee only such right or title as the transferor had to the goods therein described, and the negotiability, even to this limited extent, may be destroyed by printing across the face of the instrument words "not negotiable": 10 C. J. 205, § 271.

■ Tersely stated, the transfer of a straight bill of lading will not cut off the seller's right of stoppage in transitu. In such case the transferee acquires no greater or additional rights than his transferor. The same may be said in regard to the assignment of the account or invoice. An assignee of a "straight" bill of lading stands in all respects in the same shoes as his assignor: *Quality Shingle Co. v. Old Oregon L. & S. Co.,* 110 Wash. 60 (187 P. 705); *Cashmere Fruit Growers' Union v. G. N. R. Co.,* 149 Wash. 319 (270 P. 1038). The shipments now under consideration were interstate shipments. Section 109, Title 49, U. S. Code, provides as follows:

"A bill may be transferred by the holder by delivery, accompanied with an agreement, express or implied, to transfer the title to the bill or to the goods represented thereby. A straight bill can not be negotiated free from existing equities, and the indorsement of such a bill gives the transferee no additional right."

The right of stoppage in transitu is not terminated until there has been a final delivery of the goods to the vendee or his agent at the place named by the vendee to the vendor as the place of final delivery or other des-

tination of the goods. Delivery to a person acting as a carrier or forwarding agent will not terminate the right. In the case of *Markwald v. Creditors*, supra, the vendee had purchased an invoice of cigars in Havana and directed the vendor to ship them to P. & S. at New York. The vendee directed the New York house, on receipt of the goods, to reship them to San Francisco. While the goods were in transit from New York to San Francisco, the vendee became insolvent and the vendor gave notice of stoppage in transitu. It was held that the New York house being agent only for the purpose of expediting the carriage of the goods to their original destination, delivery to them did not terminate the right of stoppage in transitu. The court said:

"It is well settled that the right to stop goods in transitu, exists until they arrive at the termination of their journey or have come into the possession of the consignee. Depositing them at an intermediate point with an agent of the vendee, for the purpose of being forwarded, does not terminate the transitus." To like effect, see *Blackman v. Pierce*, supra.

■ In the case at bar the appellants take the position that the delivery of the lumber F. A. S. Ship's Tackle, Mill Dock, ended the transit so far as the plaintiffs were concerned. Such, however, is not the case. Delivery of the lumber on the docks alongside ships or on board ships was not a delivery to the vendee, except for the purpose of shipment. If it be said that the carriers were agents of the vendee because the latter had chartered the space in the boats, they were agents for the purpose of transportation only, and delivery to a forwarding agent or a carrier for the purpose of transportation does not end the transitus of the goods. In the case of *Markwald v. Creditors*, supra, there had been a full and complete delivery of the goods to the

buyer's agents in New York, who re-shipped them to the buyer at San Francisco, and the court held delivery to the New York house did not terminate the right of stoppage in transitu, but that such right continued until the arrival of the goods at their ultimate destination at San Francisco. In *Blackman v. Pierce,* supra, the goods were delivered to an agent of the buyer at a river port, from whence they were to be taken by wagon to the buyer's place of business in another town. It was held that delivery at the intermediate point did not terminate the transitus, and that the right of stoppage in transitu continued until the arrival of the goods at their final destination.

The transitus in the instant case would continue until the lumber arrived at the respective places named by the Henry D. Davis Lumber Company to the plaintiffs as the places of final delivery or ultimate destination of the lumber, which places were: Boston, Mass., Brooklyn, N. Y., Philadelphia, Pa., Baltimore, Md., and Norfolk, Va. None of the lumber had arrived at these places, but the whole thereof was in transit thereto, when the notices of stoppage in transitu were served, or when the stipulation which took the place of further notices was signed: *Whitehead v. Anderson,* 9 Mees. & W. 534.

In *Mohr v. Boston & Albany R. R. Co.,* 106 Mass. 67, A sold to B, in Boston, a number of barrels of whisky then in a bonded warehouse in Indiana, B giving his acceptances for the price and the warehouseman giving his certificate for the whisky as the property of B. A agreed that when so requested he would draw the whisky from the warehouse, pay the taxes, charges and insurance, and draw on B for the amount. The goods, while in the warehouse, were regarded as in the hands

of an intermediate agent on their way to the vendee. We read in 7 A. L. R. (Annot.) p. 1399, a discussion of the case of *Harris v. Pratt,* 17 N. Y. 249, affirming 6 Duer. 606, as follows:

"Here two partners, under different firm names, carried on businesses at New York and at Nottingham, England. The Nottingham firm bought goods in their firm name, expressly stating that they were for the New York house, and directing that they be sent to a Liverpool firm, which was a shipping agent, to await further orders for shipment. The invoice was to the Nottingham firm, and the vendors, on shipping the goods to the Liverpool agent, wrote that they were sending the goods for the Nottingham firm, from whom 'you will receive further instructions.' On the same day the vendee sent shipping directions to the Liverpool firm. While the goods were on shipboard between Liverpool and New York, the vendors sought to exercise the right of stoppage in transitu, and it was held that the transit had not ended with the delivery to the Liverpool agents, the court holding to the theory that New York was the destination contemplated by both the vendors and the vendees, wherefore the Liverpool firm was merely a forwarding agent. In this connection, Denio, J., among other things, said: 'We cannot consider the sending of the goods by the plaintiffs to the shipping agents at Liverpool as a full and final delivery of them to the purchasers. We regard what was done by the Halls of Nottingham, in giving directions to the shipping agents, to have been in aid of the general purpose of sending the goods to New York. The partner at Nottingham, though in law one of the purchasers, acted in regard to these goods as an agent of the house at New York in facilitating the transportation to that city. During the short time the goods remained in the hands of these agents, before the directions came from Nottingham, they could not be said to be "awaiting new orders from the purchaser to put them again in motion to communicate to them another substantive destination." * * * New York

was the destination contemplated from the beginning. It was the one named to the vendor, and there was no thought of diverting the goods from that point, at any time or by any person. They were awaiting a new impulse only in the sense in which that may be predicated of freight in transitu which is temporarily at rest while arrangements are making to send it forward on the journey on which it was originally embarked. We are of opinion, therefore, that the transitus was not determined at Liverpool.' And Strong, J. said: 'The extent of the transit does not depend upon the direction or address of the goods, in a shipping bill or otherwise, or any information to the carrier, but only upon the purposes of the buyers communicated to the sellers, unless some change of purpose occurs'."

As to the delivery to a ship of the vendee, see Annot. 7 A. L. R. 1405.

So, in the present case, the destination of the lumber, according to the orders therefor made by the Henry D. Davis Lumber Company, which were accepted as modified by plaintiffs, was not the mill dock, but Boston, Mass., or some other Atlantic coast point. Practically every shipment of the lumber that was made was from the state of Washington by water to points on the Atlantic coast. The final destination of the shipment, as contemplated by both the vendors and the vendees, and as thoroughly understood, was some point on the Atlantic coast.

The original contract for the sale of the lumber plainly provided that the Henry D. Davis Lumber Company should pay "Cash on Receipt of Documents". The Henry D. Davis Lumber Company received the documents, which included invoices, inspection certificates and mates' receipts, showing that the lumber had been furnished and placed in accordance with the purchaser's order, but that company failed to pay for the

lumber, as agreed. The testimony shows that plaintiffs never waived any of the terms of the contract or arrangement, or agreed to any condition of payment other than that provided by the original contract, and no title to the lumber passed to the Henry D. Davis Lumber Company, or to its assignee.

Plaintiffs had a right to reclaim the lumber irrespective of their right of stoppage in transitu. Where the sale is for cash and the purchase price is not paid, the title, notwithstanding delivery, does not pass from the seller, and in the absence of a waiver or estoppel the seller may reclaim the goods, either from the buyer or from a third party claiming under the buyer. The buyer having no title himself can pass none, even to an innocent purchaser for value: *Johnson v. Iankovetz,* 57 Or. 24 (102 P. 799, 110 P. 398, 29 L. R. A. (N. S.) 709); *Peoples State Bank v. Brown,* 80 Kans. 520 (103 P. 102, 23 L. R. A. (N. S.) 824); *McIver v. Williamson,* 19 Okla. 454 (92 P. 170, 13 L. R. A. (N. S.) 696); 55 C. J. 920, 921, § 905.

In the sale of cumbersome articles like lumber, it can not be delivered and collection made therefor in the same manner as goods are sold over the counter. Where payment is to be made for lumber ''Cash in Exchange for Documents'' there is necessity for sufficient time to examine or check the documents, ascertain if the invoice corresponds with the order, if the inspection certificate is in proper shape and if the mate's receipt covers all the lumber described in the invoice: *Samuel M. Lawder & Sons Co. v. Albert Mackie Grocer Co.,* 97 Md. 1 (54 Atl. 634).

Delivery and payment are concurrent conditions unless otherwise agreed: § 64-502, Oregon Code 1930. A transfer of a non-negotiable document gives no addi-

tional right: § 64-415, Oregon Code 1930. The property in goods passes when parties so intend: § 64-402, Oregon Code 1930.

The appellants contend that the plaintiffs waived the payment of cash upon delivery of documents. A prior course of conduct under previous contracts will not operate as a waiver of an express stipulation in a new contract. To constitute a waiver of the condition of payment, there must be not only an act of delivery but also an intent not to insist on immediate payment as a condition of the title passing. In a cash, or cash on delivery sale, if the seller delivers but the buyer violates his promise to pay, the buyer does not acquire title: *First State Bank of Brandon v. Kohl,* 79 Colo. 620 (247 P. 571); *Hale v. Beley Cotton Co.,* 154 Tenn. 689 (290 S. W. 994). And after delivery the title remains in the seller until payment unless he waives the right to treat the sale as a cash transaction: *Pyrene Mfg. Co. v. Burnell,* 127 Me. 503 (144 Atl. 649); *Luce v. Brown,* 96 Vt. 140 (118 Atl. 530). If the contract provides for payment, delivery alone is not sufficient to pass title: 55 C. J. 573, § 580. If the seller delivers on an understanding, express or implied, that he is to receive immediate payment, and he does not, he may reclaim the goods, or if he delivers on payment by check and the check is dishonored he may reclaim the property, or its value: 55 C. J. 576, § 583; *In re Perpall,* 256 Fed. 758 (168 C. C. A. 104); *Clark v. Hamilton Diamond Co.,* 109 Cal. 1 (284 P. 915). The vendor may reclaim the property from the vendee or any party who has no greater equities: *Mott v. Nelson,* 96 Okla. 117 (220 P. 617); *First National Bank of Byars v. Griffin,* 31 Okla. 382 (120 P. 595, 49 L. R. A. (N. S.) 1020).

From a careful consideration of the record, we are unable to agree with appellants that the sale was on

a short-time credit or other than cash on delivery of documents. On receipt of the documents by the Henry D. Davis Lumber Company, checks were drawn by it in favor of the plaintiffs, the sellers of the lumber, for the several amounts named in the invoices in accordance with the contracts of sale or orders and acceptances, but the checks were not mailed or delivered to the sellers and were held, and payments were not made. This was in violation of the contracts providing for the terms of sale, "98% Cash in Exchange for Documents", or a similar stipulation of "Cash Less 2% Upon Receipt of Papers". The writing of the checks at the time of the receipt of documents by the Henry D. Davis Lumber Company shows that it was the understanding of the officers of that concern that it was a cash transaction and not a sale on credit. The Henry D. Davis Lumber Company had endeavored to obtain a purchase of the lumber on a fifteen-day credit, but this was refused by the sellers. The plaintiffs did nothing to indicate that they waived their right to immediate payment. They did not assent to a short-time credit: *Johnson v. Iankovetz,* supra.

The present case, except as to the Bremerton shipment, differs from those referred to by appellants where the vendee directs the vendor to ship the goods to a third party in the vendee's name as consignor. In such case there is a clear and unmistakable exercise of dominion and ownership on the part of the vendee, which is recognized by the vendor's compliance with the request, so as to terminate his right of stoppage in transitu: See Annot. 7 A. L. R. 1385; citing *Treadwell v. Aydlett,* 8 Heisk. (Tenn.) 388; *Eaton v. Cook,* 32 Vt. 58.

In the case at bar the documents were sent to the Henry D. Davis Lumber Company in Portland from

Washington, and we find no assent on the part of the plaintiffs to the Henry D. Davis Lumber Company exercising any act of ownership over the lumber until the same was paid for, or any act of waiver of payment upon delivery of documents. They were to pay as indicated, by forwarding to plaintiffs valid checks of the Henry D. Davis Lumber Company. Checks were prepared but not mailed.

In *Dows v. Dennistoun*, 28 Barbour's (N. Y.) 393, the plaintiff sold 500 barrels of flour to one Cooper for cash, and the vendor, by Cooper's direction, sent the flour aboard ship to be sent to Liverpool for sale. The flour was so sent on board ship and Cooper received the bill of lading therefor. The referee found as facts that the purchase was for cash, by which the parties intended and meant payment in about ten days after the purchase, according to a custom in that trade to that effect. Six days after the sale Cooper sold the bill of lading, and a bill of exchange drawn upon it, to the defendants, upon the understanding that the same was to be paid for two days later. The defendants refused to pay for the bill of lading and bill of exchange and undertook to offset the amount against Cooper's indebtedness to them. The syllabus, which gives the gist of the opinion, reads thus:

"An understanding, arrangement or custom that the possession of the goods shall be intrusted to the vendee for the purpose of enabling him to realize upon them, and thus provide the means for the payment of the price, cannot be construed into an absolute transfer of the title to the property, as between the original parties to it, or persons having no greater equity than the original parties." See also *Dows v. Kidder*, 84 N. Y. 121.

■ An assignee or receiver can acquire no other, greater or better interest than the debtor had in the

property. To this extent the receiver stands in the shoes of the debtor: 53 C. J. 100, 101, § 125; *Re Assignment of Hamilton,* 26 Or. 579 (38 P. 1088); *Roeblings Sons Co. v. Frederickson L. & T. Co.,* 153 Wash. 580 (280 P. 93).

■ Plaintiffs were sellers of the lumber. They had a right to reclaim the property. They may also follow and recover the proceeds of the lumber so long as they can be identified. This would be true if they can be traced although they have become a part of a common fund: 55 C. J. 924, § 908; *Dalrymple v. Randall, etc., Co.* 144 Minn. 27 (174 N. W. 520); *American Sugar-Refining Co. v. Fancher,* 145 N. Y. 552 (40 N. E. 206, 27 L. R. A. 757).

The question is raised, are the plaintiffs entitled to interest on their sale? As noted, after the plaintiffs had taken steps to reclaim the lumber other than of Parcel 7, and prior to the commencement of the action, an agreement was entered into between the parties whereby it was agreed that the lumber should be delivered to the subpurchasers and the subpurchase money collected and turned over to the appellant bank as trustee to be held in a special trust fund until the rights of the respective parties could be litigated.

The stipulation provides that the bank shall advance sufficient money to pay the freight charges to accomplish the delivery of all the lumber, the invoices for which have been assigned to it and the Adjustment Bureau will advance sufficient money to secure the delivery of all the rest of such lumber; that the bank shall immediately pay to itself all sums advanced for freight charges, "and also pay to itself interest on such advances at the rate of six per cent per annum, and shall pay to the Adjustment Bureau all sums by it advanced

for such freight charges, without interest", and the remainder shall be held by the bank as such trustee for the parties finally determined to be entitled thereto. Paragraph 5 of the stipulation provides: "The moneys in and composing said trust fund shall, to all legal intents and purposes, stand and be in lieu of said lumber and in lieu of any rights or interests in the same or the proceeds thereof, * * *."

As heretofore noted, the bank, in accepting this trust, placed itself in a dual position. It is a claimant and also is practically a stakeholder for itself and the other parties claiming the fund. The suit, to all intents and purposes, is in the nature of an interpleader suit. After the proceeds of the lumber were received, if it had been settled as to whom it belonged, the indebtedness of the Henry D. Davis Lumber Company would have been satisfied as to that amount.

■ Noticing the particular agreement as to interest being paid to the bank and not to the Adjustment Bureau, there is no stipulation that interest on the trust fund held by the bank shall be paid. This is an equity suit, and we do not think it would be equitable for the trust fund to be reduced by the payment of interest on the amount due the plaintiffs. If the lumber had not been sold pursuant to the stipulation and was the subject of controversy in a suit similar to the present suit, there would have been no interest computed on the lumber. The amount of the interest on the amounts awarded to the plaintiffs by the decree should be eliminated.

We come now to a consideration of Parcel 7, the lumber shipped by scow to Bremerton, amounting to $1,928.94. In regard to this shipment, plaintiff alleges:

"That on or about February 19, 1932, the Plaintiff Weyerhaeuser Timber Company sold to the defendant

the Henry D. Davis Lumber Company certain lumber for the agreed sum or price of $1,928.94 on the terms 'Cash in Exchange for Documents,' to be delivered f.a.s. Everett, Washington, for shipment by scow to said *buyer* (Davis Lumber Company) at Bremerton, Washington, as evidenced by the invoice therefor, a copy of which is hereunto attached and made a part hereof and marked Weyerhaeuser's Exhibit 'G'. That said plaintiff delivered said lumber f.a.s. Everett, Washington and transmitted the invoice therefor to said buyer at Portland, Oregon by United States mail and which the buyer duly received, but said defendant did not pay for said lumber on receipt of said document, nor at all, and said lumber was transported by scow and delivered to said buyer at Bremerton, Washington, and said buyer, without paying therefor and unbeknown to said plaintiffs, resold the same to a third party and assigned or purported to assign the invoice therefor to the defendant The First National Bank of Portland,  *  *  *.''

The invoice of the Weyerhaeuser Timber Company, sent to the Henry D. Davis Lumber Company for this shipment, was in part as follows:

"Weyerhaeuser Timber Company, Tacoma, Washington

Date February 19, 1932.

Sold to Henry D. Davis Lumber Co., Portland, Oregon.

Shipped To Same Bremerton Navy Yard

Invoice No. EW-121

Our Order No. 2457-TW

Your Order No. 8610

Vessel By Scow

Shipped From Everett, Wash.''

■ It will be seen by this invoice that the Weyerhaeuser Timber Company permitted the Henry D. Davis Lumber Company to ship this lumber to the Bremerton Navy Yard to itself. This shipment of lum-

ber evidenced an act of ownership and dominion over the lumber by the Henry D. Davis Lumber Company, which was assented to in writing by the Weyerhaeuser Timber Company. When the lumber was delivered F.A.S. Everett, Washington, and the invoice and inspection certificate were mailed to the Henry D. Davis Lumber Company, plaintiff Weyerhaeuser Timber Company was entitled to payment for the lumber. After it permitted the Henry D. Davis Lumber Company to ship the lumber to Bremerton to itself, being the second delivery without requiring payment therefor, and sell it to the Bremerton Navy Yards, we think that the plaintiff Weyerhaeuser Timber Company waived the provision for the cash payment.

The appellant First National Bank is entitled to the proceeds of the Bremerton shipment to the amount of the money advanced to the Henry D. Davis Lumber Company thereon.

There was no right of stoppage in transitu asserted by the plaintiff Weyerhaeuser Timber Company in regard to the Bremerton shipment. That company, by its invoice, authorized the Henry D. Davis Lumber Company to ship the lumber as consignor to itself as consignee at Bremerton, or, in substance, as its own lumber and for its own use, thereby clothing the Henry D. Davis Lumber Company with the indicia of ownership of the lumber and arming the Henry D. Davis Lumber Company with authority to pledge the proceeds thereof to the defendant bank. Then the Weyerhaeuser Timber Company waited before it attempted to protect itself in any way until the Henry D. Davis Lumber Company sold the lumber to the United States Navy Yard. Afterward the price thereof was collected and paid to the defendant bank. This sale occurred in Weyerhaeuser

Timber Company's own state of Washington, where it could easily have ascertained what was being done in regard to this lumber.

In 55 C. J. 638, § 655, it is said:

"If the owner of goods invests another with the indicia of an absolute title thereto or of authority to transfer them, and the latter, while the property is in his possession, sells it to a bona fide purchaser who relies on such possession and indicia of title thereto, the owner is precluded from asserting his claim as against such purchaser." See *Fiore v. Ladd & Tilton*, 22 Or. 202 (29 P. 435); 24 R. C. L. 378, § 665.

This was the only parcel of lumber that either of the plaintiffs authorized, in writing or in any way, the Henry D. Davis Lumber Company to ship in its own name without payment therefor. The bank unquestionably acted in good faith in loaning the money to the Henry D. Davis Lumber Company and on the faith of the proceeds of the Bremerton shipment.

The respondent Weyerhaeuser Timber Company suggests in regard to the Bremerton shipment that the Henry D. Davis Lumber Company made up an invoice to the Navy Department on its own form. It failed to note, however, that the respondent Weyerhaeuser Timber Company authorized in writing the lumber to be shipped to the Henry D. Davis Lumber Company at the Bremerton Navy Yard.

The amount of the decree in favor of plaintiff Weyerhaeuser Timber Company on account of the Bremerton shipment of lumber was $1,890.36, which should be deducted from the judgment and decree of the trial court, in addition to the interest heretofore mentioned.

With the modifications or deductions above mentioned, the decree of the circuit court is affirmed.

The stipulation of the parties provided that each of the parties should pay their own costs and disbursements in the circuit court, and we think, under the circumstances of the case, that the same rule should be applied upon this appeal. Therefore, each party will pay his or its own costs and disbursements in this court.

RAND, C. J., and BELT and KELLY, JJ., concur.

---

Original opinion sustained on rehearing April 23, 1935

ON REHEARING
(43 P. (2d) 1078)

BEAN, J. This is a rehearing in a suit in equity brought by the plaintiffs to determine the right to the proceeds of certain lumber sold to the Henry D. Davis Lumber Company. Our former opinion contains a full statement of the facts. The Henry D. Davis Lumber Company purported to assign a part of the invoices on resale to the First National Bank of Portland. The lower court found a decree in favor of plaintiffs for the full amount; the First National Bank of Portland and Thomas H. Mills, as receiver for the Henry D. Davis Lumber Company, appealed.

There were involved nine parcels of lumber sold by plaintiffs to the defendant company, and, in our former opinion, we found that the bank was entitled to the proceeds of parcel 7, lumber sold by the Weyerhaeuser Timber Company and described in the invoice, Exhibit G, amounting to $1,928.94, known in the record as the Bremerton shipment. No rehearing was asked in regard to this parcel of lumber and, therefore, it is out of the case, except in so far as the circumstances in regard thereto might have a bearing on other parts of the case.

During the time from January 28, 1932, to February 13, 1932, both inclusive, the Weyerhaeuser Sales Company received from the Henry D. Davis Lumber Company seven orders for lumber for water shipment. Six of these orders directed that delivery be made F. A. S. Ship's Tackle, Mill Dock, and designated as places of final destination points on the Atlantic coast. The orders contained the words, of which the following is a sample, "Vessel destined to Philadelphia, Pa." The other orders named different places. Each of these orders specified the terms "100% Advance Less 2% Discount 15 Days". The Weyerhaeuser Sales Company seemingly was better informed, in regard to the financial standing of the Henry D. Davis Lumber Company, than the defendant bank, and refused to accept any of the orders on such terms, and, immediately upon receipt of each order, mailed to the Henry D. Davis Lumber Company an acknowledgment thereof, but specified the terms as "Terms 98% CASH IN EXCHANGE FOR DOCUMENTS", and on each of such acknowledgments was plainly printed the following: "Order accepted as written hereon. Please advise at once if not satisfactory." The Henry D. Davis Lumber Company made no objection to the cash terms, as stated in the acknowledgment.

Mr. W. W. Conger, who made most of the purchases for the Henry D. Davis Lumber Company, upon the trial, testified in substance, that the time for payment of fifteen days credit requested was so short, and that there was so little difference in the proposition that he did not take the matter up with the Sales Company, as he would if he had not accepted the terms as made by it to the Henry D. Davis Lumber Company. On cross-examination, he testified in part: "Q. When I say insisted, I mean you tried to get 15 days, and they came

back and said, 'No, we want cash.' A. Yes, that is right.''

They proceeded to carry out the order as accepted by the Sales Company, and, no objection to the terms having been made to the Weyerhaeuser Sales Company, the Weyerhaeuser Sales Company allocated the orders, two to the Snoqualmie Lumber Company and the other five to the plants of the Weyerhaeuser Timber Company. They were all filled in due course, the shipments in each case being about two weeks subsequent to the receipt of the order and submission of the acknowledgment. Upon the different shipments being made, the documents, consisting of invoice, mate's receipt, and P. L. I. B. (inspection certificate) were mailed to the Henry D. Davis Lumber Company at Portland, Oregon, and were received by it.

On January 28, 1932, the Long-Bell Lumber Sales Corporation received an order for lumber from the Henry D. Davis Lumber Company, to be shipped by water. This order directed delivery F. A. S. Ship's Tackle, Mill Dock, and the point of ultimate destination was designated as follows: ''Vessel destined to Norfolk, Va.'' This order also specified the terms: ''100% Advance Less 2% Discount 15 Days''. The Long-Bell Lumber Sales Corporation would not accept the order on such terms, and, on the following day, mailed to the Henry D. Davis Lumber Company an acknowledgment of the order specifying the terms as ''Cash Less 2% Upon Receipt of Papers'', and there was plainly printed on such acknowledgment a notice that the order was accepted on the terms written thereon, and to advise at once if the terms were not satisfactory. This acknowledgment was accompanied by a letter calling attention to the change in terms and advising the Henry D. Davis Lumber Company that

the lumber would be sold only on cash terms. The Henry D. Davis Lumber Company made no objections to the cash terms, as contained in the acknowledgment. As explained in the testimony of one of its officers, the order was filled by the Long-Bell Lumber Sales Corporation, and the company prepared and mailed to the Henry D. Davis Lumber Company of Portland, Oregon, the proper documents, consisting of invoice, mate's receipt, and P. L. I. B., which were received. All of the invoices stated the terms as contained in the acknowledgment, namely, "Cash Less 2% Upon Receipt of Papers". Copies of the invoices were attached to the complaint and marked as exhibits. The shipment of the Long-Bell lumber was from three to four weeks subsequent to the receipt of the order and the submission of the acknowledgment. The deliveries of all the aforesaid lumber were made from February 15 to February 27, 1932, both dates inclusive.

It appears from the testimony that the Henry D. Davis Lumber Company well understood that the terms of the sale of the lumber were cash upon receipt of documents or papers, and it drew checks in favor of the respective plaintiffs for the amounts due them, but failed to mail the checks to plaintiffs, and none of the plaintiffs were ever paid for any of such lumber. The proceeds of the sale involved are in somewhat different categories. The appellant bank is not interested, other than as trustee, in parcels 1 and 2. One shipment was resold by the Henry D. Davis Lumber Company to private parties and the others were sold to the government. Soon after the Henry D. Davis Lumber Company received the documents for the parcels of lumber shipped to the Atlantic coast, it procured bills of lading therefor and caused the lumber to be shipped to purchasers on the Atlantic coast, designating the

Henry D. Davis Lumber Company in the bills of lading as shipper, and the subpurchasers as consignees. None of the plaintiffs were advised of this. All the bills of lading were straight, nonnegotiable bills of lading; no order bills of lading were taken. The Henry D. Davis Lumber Company made out invoices on its own forms to its subpurchasers for the amounts of the subpurchase money, and purported to assign copies of such invoices covering all the lumber, except parcels 1 and 2, to the appellant bank.

March 5, 1932, the Henry D. Davis Lumber Company, being insolvent, made a general common-law assignment for the benefit of its creditors, and all of the lumber involved (except parcel 7) was then still on board ships and in the course of transit to subpurchasers on the Atlantic coast of the United States. Upon learning of such assignments, and of the insolvency of the Henry D. Davis Lumber Company, each of the plaintiffs gave notice of stoppage in transitu to the carriers transporting the lumber, notifying such carriers that the title to the lumber had not passed from the respective plaintiffs, for the reason that same was sold as a cash sale and the purchase price had not been paid, and in the event that title had passed plaintiffs claimed the right of stoppage in transitu as unpaid sellers.

A stipulation was then entered into between all of the parties hereto, except the appellant receiver who had not yet been appointed, whereby it was agreed that the plaintiffs should each withdraw their notices of stoppage in transit; that the lumber should be delivered to the subpurchasers and the appellant bank would collect the purchase money payable by the subpurchasers and hold the same in a special trust fund in lieu of the lumber, and that all rights, and interest of

each and all of the parties involved, to any of the lumber mentioned in plaintiffs' complaint, or the proceeds thereof, should be determined in one judicial proceeding, to which all parties interested should be made parties plaintiff or defendant. After the appointment and qualification of said receiver, the court made and entered an order making him a party to said agreement and to such proceedings. Upon the signing of said stipulation, each of the plaintiffs withdrew its notice of stoppage in transitu and the lumber was delivered to the respective purchasers. The net proceeds of the different parcels involved were collected by the receiver and turned over to the defendant bank, except that the bank collected the proceeds of parcel 3 direct from the subpurchaser. The invoices for the lumber, parcels 3 to 9, inclusive, were assigned to the appellant bank by the Henry D. Davis Lumber Company in the following manner: In the case of parcel 3, the bill of lading (a straight nonnegotiable bill) was transferred to the bank. In the case of parcels 4 to 9, inclusive, no bills of lading were transferred; neither were the original invoices, but copies of the invoices were delivered to the bank with a form of assignment, assigning "the within invoice" indorsed thereon, with the verbal agreement that the Henry D. Davis Lumber Company would send the original invoice and bill of lading to the subpurchaser, collect the subpurchase money and remit the same when collected to the appellant bank. Each of such assignments was made as collateral security to secure the payment of a promissory note given by the Henry D. Davis Lumber Company to the appellant bank at the time of the assignment, and the bank would credit the Henry D. Davis Lumber Company's general deposit account with the amount of the money.

On March 10, 1932, the appellant bank was advised by the plaintiffs of the terms under which the lumber had been sold to the Henry D. Davis Lumber Company, and that it had not been paid for. At that time there was still on deposit in said bank, to the general account of the Henry D. Davis Lumber Company, the full amount of the loan made by the bank for the assignment of the invoice for parcel 6, namely, $270. On the following day the bank permitted the assignee of the Henry D. Davis Lumber Company to withdraw the same. None of the lumber involved (except parcel 7) was paid for by the subpurchasers prior to April 1, 1932.

The position of the plaintiffs is that the sale being made for cash on delivery of documents, and no payment having been made in conformity therewith, no title to the lumber passed to the Henry D. Davis Lumber Company, and the plaintiffs have a perfect right thereto and to the proceeds thereof; and, further, that if title to the lumber had passed, the plaintiffs had the right of stoppage in transitu and to reclaim the same; and that the assignments of the proceeds of the shipments to the United States government were void.

■■ The contention of defendant bank is that although the sale was for cash on receipt of documents or papers, on account of a custom, the term "cash sale" means a short-term credit of five or 10 days.

"The term 'cash sale' is used to define a kind of a sale where the payment of the price is a condition of the transfer of title to the buyer.": 1 Williston on Sales (2d Ed.) 804, § 341. "A 'cash sale' is a sale conditioned on payment concurrent with delivery and not a sale on credit.": 1 Words and Phrases (2d Ser.) 586. Such a construction of the term "Cash on Delivery of Documents" is inconsistent with the contract made by

the parties. Admittedly, the Henry D. Davis Lumber Company requested a credit of 15 days. Each of the plaintiffs refused to give such credit, and plainly stated the terms as "Cash Upon Receipt of Documents". To be regarded as part of a contract, the usage or custom must not only be shown to exist but it must be consistent with the contract. If this element is lacking, the usage or custom cannot be regarded as a part of the contract: 4 Page on Contracts (2d Ed.) § 2057; *Shaw Wholesale Co. v. Hackbarth,* 102 Or. 80, (198 P. 908, 201 P. 1066).

The Henry D. Davis Lumber Company was satisfied with the terms and received the documents on those terms, but failed to pay. The plaintiffs were the owners of the lumber which they manufactured; they could not be divested of that ownership except by their consent, and nowhere in the record do we find that they assented to the sale of the lumber except as specified.

In discussing cash sales, modern law, Mr. Williston, in his work on Sales, submits that the true test is this: "If the parties, when they make their bargain, contemplate an exchange of goods for the price immediately on making the bargain, the sale is to be regarded as a cash sale.": 1 Williston on Sales (2d Ed.) 811, § 343.

The general rule is, in a sale for cash, or cash on delivery, payment of the purchase price, unless waived, is a condition precedent to the passing of title; and this is true where the sale is expressly for cash, or cash on delivery, and in some jurisdictions where a cash sale is implied from the fact that the contract is silent as to the time for payment: 55 C. J. 567, § 577. "Where the contract stipulates for cash payment, the buyer must pay to secure a bill of lading, even though

a right of inspection must come later. The fact that time is required in which to procure the money for payment does not alter the character of a cash sale.'': 55 C. J. 514, § 507. ''The rule that upon a sale for cash or cash on delivery payment of the purchase price is a condition to the passing of title applies, unless it is apparent from other provisions of the contract that the intention of the parties thereto is otherwise. If the agreement does not provide in express terms that payment shall be made on delivery and no provision is made for credit, the intent of the parties must control; *   *   *'': 55 C. J. 570, § 577.

█ The rule that where personal property is sold for cash and no payment is made, or a check is given which is dishonored, no title passes to the buyer, even though possession is taken by him and the buyer can not convey title to an innocent purchaser, is adopted in this state: *Johnson v. Iankovetz,* 57 Or. 24 (102 P. 799, 110 P. 398, 29 L. R. A. (N. S.) 709). In that case an action of replevin was commenced in the justice court for the recovery of two guns valued at $45.05. One E. C. Adams contracted to purchase from plaintiff the two guns at the price named, and gave him his check for $45.30 on the Merchants' National Bank. He had no money in the bank and the check was dishonored. At the time of the transaction plaintiff delivered the goods to Adams, who, on the same day, sold them to defendant for the sum of $22. Upon appeal to the circuit court, judgment was rendered in favor of plaintiff. Defendant appealed, and on appeal the case was affirmed by this court. Mr. Justice EAKIN states, quoting with approval from Benjamin on Sales, as follows:

''The law presumes a sale to be for cash, when nothing is said to the contrary, and, upon a sale for cash, payment and delivery are concurrent acts. If the

price is not paid at the time of the delivery of the goods, the vendor may immediately reclaim them. Mechem, Sales, § 551. 'Where the buyer is by the contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer.' Benjamin, Sales, § 320.

And in his notes to this rule, at page 299, he says: 'It being clear that, in the absence of any credit expressly or impliedly allowed, payment is a condition precedent, or at least concurrent, it necessarily follows that the right of property does not pass until that is done, even though the article is delivered.'

No title will pass even to an innocent purchaser, for value from the vendee, unless the circumstances show that the vendor waived his right to immediate payment.''

In *Hart-Wood Lbr. Co. v. Bonaly,* 192 Cal. 180 (219 P. 432), it was stated as follows:

''According to the settled law in this state, where a contract calls for payment upon the delivery of goods, or is silent on the subject—when the obligation to make payment at that time will be inferred—title will not pass until the price is paid, unless it is apparent from other provisions of the contract that the intention of the parties thereto is otherwise.''

The case of *Commonwealth v. Devlin,* 141 Mass. 423 (6 N. E. 64) is discussed in the notes in 1 Williston on Sales, p. 812, where it is stated:

''The defendant agreed to buy certain sheep for cash, which were weighed, and, about an hour after the weighing, the owner of the sheep and the defendant met to close the transaction. The weights were then reckoned and the seller demanded cash, but was induced to take a check on the representation of the defendant that the check was good. There was some evidence that

by custom the weighing of the sheep and the recording of the weights constituted a delivery; but the jury were instructed that such a merely constructive delivery, or even a manual delivery, would not deprive the owner of his property. * * * The delivery of the sheep was a more cumbrous operation than handling goods over a counter; but, even if it was completed before the representations were made, we think that, on all the evidence, fairly construed, it must be taken to have been made on the understanding that the payment was to be substantially simultaneous." See also *Hirsch v. Leatherbee Lbr. Co.*, 69 N. J. L. 509 (55 Atl. 645).

Also we find a discussion of *Palmer v. Hand,* 13 Johns. (N. Y.) 434 (7 Am. Dec. 392), in the notes in 1 Williston on Sales, p. 813, as follows:

"A raft of lumber coming down the North river was sold to be delivered at a dock in Albany. The lumber composing the raft was taken out of the water and nearly all piled on the dock, when the seller forbade any more to be piled because the buyer had absconded. The defendant had advanced the buyer money on the same day on the security of the lumber while it was being piled. The court held that the property had not passed. The contract was for the whole raft delivered on the dock. * * * The defendant's advances were made while the lumber was still in course of delivery." See *Guarantee Title & Trust Co. v. First Nat. Bank,* 185 Fed. 373 (107 C. C. A. 429).

In *Gunn v. Bolckow,* L. R. 10 Ch. 491, 44 L. J. Ch. 732, defendants had contracted to make and sell to Aberdare Iron Company, for shipment to Russia, iron rails, and delivered to the Aberdare Company, in exchange for their acceptances, wharfingers' certificates in the following form:

"I hereby certify that there are lying at the works of Messrs. Bolckow, Vaughan & Co., Ltd., of Middlesbrough, * * * tons of iron rails which are ready

for shipment, and which have been rolled under contract dated * * * between the said company, and the Aberdare Iron Company. W. Roe, Wharfinger."

. The Aberdare Company pledged to plaintiff these certificates, which they treated as warrants. Subsequently they filed a liquidation petition, and their acceptances were dishonored. Plaintiff claimed a charge on the rails mentioned in the certificates, upon the ground that they were warrants or documents of title divesting seller's lien, and were negotiable according to the custom of the iron trade. But this contention was repudiated by the Court of Appeal in Chancery.

"If the sale is a cash sale such that title is not to pass until payment is made, a tender of delivery or delivery without payment being made, unless it is such as to constitute a waiver of the condition of payment or the obtaining of possession by the purchaser will not operate to transfer the title." 55 C. J. 571, § 577.

"If it can be inferred from the acts of the parties and the circumstances surrounding the transaction that it was the intent that delivery and payment should be concurrent acts, the title remains in the seller until the condition of payment is complied with. Empire State Type Founding Co. v. Grant, 114 N. Y. 40, 21 N. E. 49." Note 88-b, 55 C. J. 570.

"Where a sale is for cash, payment and delivery are concurrent and mutually dependent acts, and if the vendor makes delivery in expectation of immediate payment, such delivery is conditional only and he may reclaim his goods if payment be not made." *Dalrymple v. Randall,* 144 Minn. 27 (174 N. W. 520).

The plaintiff, Weyerhaeuser Timber Company, has an office in Tacoma, Wash., and the Long-Bell Lumber Company at Longview, Wash. The plaintiffs forwarded the lumber pursuant to the contract to the mill docks, evidently the docks belonging to the different mills,

and forwarded the mate's receipt and P. L. I. B., or certificate of inspection, to the Henry D. Davis Lumber Company in Portland, Oregon. Nothing is shown to indicate that they waived their right to payment of cash on delivery. It appears that they had done business with the Henry D. Davis Lumber Company before, and evidently were not willing to make a sale to that company except for cash. Defendant bank apparently had done business with the Henry D. Davis Lumber Company before and were willing to trust it by taking its note and an assignment of the invoice and returning the bill of lading when one had been issued to the Henry D. Davis Lumber Company and accepting its promise that when it received the money from the United States it would pay the bank, and evidently relied on its promissory note. The bank, although it is familiar with a negotiable instrument, failed to demand or to take any negotiable instrument in connection with the lumber or the proceeds thereof. Henry D. Davis, the moving spirit of the company, had, for a long time, considerable influence with banks. See *Du-Bois-Matlack Lbr. Co. v. Henry D. Davis Lumber Co.*, 149 Or. 571 (42 P. (2d) 152).

Our Uniform Sales Act provides as follows:

"(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such times as the parties to the contract intend it to be transferred. * * *" § 64-402.

"A document of title in which it is stated that the goods referred to therein will be delivered to the bearer, or to the order of any person named in such document is a negotiable document of title." § 64-411.

"A document of title which is not in such form that it can be negotiated by delivery may be transferred by the holder by delivery to a purchaser or donee. A non-negotiable document cannot be negotiated and the indorsement of such a document gives the transferee no additional right." § 64-415.

"A person to whom a document of title has been transferred, but not negotiated, acquires thereby, as against the transferrer, the title to the goods, subject to the terms of any agreement with the transferrer. * * *" § 64-418.

■ As stated, the bank received no negotiable document. Neither the copies of the invoices nor the one bill of lading were negotiable documents, but were non-negotiable documents, and the transfer of such documents to the defendant bank gave it no additional right. The assignment of such an account, if we may so term it, while it was good as against the transferor, was subject to the terms of any agreement between the Henry D. Davis Lumber Company and the sellers of the lumber: Mariash on Sales, 498, § 226. The form of the document assigned to the bank was notice to it that there might be outstanding equities against the lumber, or the proceeds thereof.

■ By the terms of the contract, delivery at ship's tackle was to precede payment and such delivery is a qualified delivery and passes no title until the purchase price is paid. The Henry D. Davis Lumber Company, after the lumber was placed upon the mill docks, had no right to ship the same and they could not convey title to the lumber, or the proceeds thereof, without payment for the same. The law governing such sales is stated by the Supreme Court of Washington as follows:

"The general rule is that, where goods are sold upon condition that the price therefor shall be paid upon receipt of an invoice of the goods, the sale is for cash, and the title remains in the seller until the goods are paid for." *Orilla Lbr. Co. v. Chicago, Etc. R. Co.*, 81 Wash. 611 (143 P. 152).

"While there is conflict among the authorities upon the question, we think the great weight of authority is to the effect that, where goods are sold upon condition

that the price therefor shall be paid upon receipt of the invoice of the goods, the title remains in the seller until the goods are paid for, unless the original vendor is guilty of laches, or by some act has waived his right, or is estopped from claiming that the sale is one for cash.'' *Orilla Lbr. Co. v. Chicago, Etc. R. Co.*, 84 Wash. 362 (146 P. 850). See *Nugent v. Union Automobile Insurance Co.*, 140 Or. 61, 68 (13 P. (2d) 343).

The plaintiffs, in the case at bar, were not guilty of laches and by no act waived their rights, and are not estopped to claim that the sale was for cash. The burden is on the buyer to prove that the seller waived the condition of cash payment: *Sparkman v. Brown*, 42 Ga. App. 335 (156 S. E. 240). Defendant company was entitled to a sufficient time to assemble the documents, examine the invoice to see if it conformed to their order, examine the mate's receipt to see that it covered the lumber, and the certificate of inspection, or P. L. I. B., to ascertain if it was in proper condition.

Where the seller gives the purchaser a short time for such purpose, it is not an extension of credit; it is a courtesy and not a right under the contract. In the case of *Stone v. Perry*, 60 Me. 48, plaintiffs sold some flour for cash; the flour was shipped to the buyer and duly arrived. On the next day plaintiffs sent a bill for the flour, with the words ''Terms Cash'' printed on the margin. By the usage of trade in Boston, it appeared that when flour was sold for cash it meant that the seller had the right to call for the payment at any time he pleased, but the custom was not to call for 10 days; the 10 days is a courtesy and not a right. The seller, not being paid, was allowed to replevy the goods from an attaching creditor of the buyer.

There was no intention of waiver of cash payment in the instant case, and it is plain that no unreasonable

period of time had elapsed, as the earliest sale involved was made less than three weeks before the vendee made an assignment for the benefit of creditors. See *Sprague Canning Machinery Co. v. Fuller,* 158 Fed. 588, where the seller was permitted to reclaim the machine from the buyer's trustee in bankruptcy several months after the sale and delivery.

In *American Ry. Express Co. v. Voelkel,* (Tex.) 252 S. W. 486, the seller's assignee was permitted to recover the purchase price of the machine from a third party to whom the buyer had transferred it, approximately a year after the delivery. In *People's State Bank v. Brown,* 80 Kans. 520 (103 P. 102, 23 L. R. A. (N. S.) 824), the syllabus reads:

"When a bargain is completed for the sale of specific personal property for cash, and delivery is made, if the buyer fails to pay the price promptly, the seller has a right, as between the parties or against an attaching creditor, to reclaim the property, which is not lost by delay to assert it, unless an intention on his part is shown that the title should pass absolutely, and whether that is the case is ordinarily a question of fact, to be determined in view of all the circumstances."

The Uniform Sales Act provides as follows:

"Subject to the provisions of this act, notwithstanding that the property in the goods may have passed to the buyer, the unpaid seller of goods, as such, has:

(a) A lien on the goods or right to retain them for the price while he is in possession of them.

(b) In case of the insolvency of the buyer, a right of stopping the goods in transitu after he has parted with the possession of them. * * *." § 64-602.

"Subject to the provisions of this act, when the buyer of goods is or becomes insolvent, the unpaid seller who has parted with the possession of the goods has the right of stopping them in transitu; that is to say, he may resume possession of the goods at any time while

they are in transit, and he will then become entitled to the same rights in regard to the goods as he would have had if he had never parted with the possession.'' § 64-606.

''Subject to the provisions of this act, the unpaid seller's right of lien or stoppage in transitu is not affected by any sale, or other disposition of the goods which the buyer may have made, unless the seller has assented thereto. If, however, a negotiable document of title has been issued for goods, no seller's lien or right of stoppage in transitu shall defeat the right of any purchaser for value in good faith to whom such document has been negotiated, whether such negotiation be prior or subsequent to the notification to the carrier, or other bailee who issued such document, of the seller's claim to a lien or right of stoppage in transitu.'' § 64-611.

There is some difference of expression in the authorities in such cases, some terming the condition, where a seller is not paid and possession is delivered to the buyer, as one in which the buyer obtains a defeasible title but the seller retains the right to enforce his agreement and to have the title revest in him, which, as we understand it, is more a matter of expression than anything else.

We are constrained to hold that the plaintiffs, in the present case, did not part with their right to the lumber, or to enforce the condition specified in the contract that they should be paid, and that the Henry D. Davis Lumber Company, not being the owner of the lumber, could not sell or pledge the same, or the proceeds thereof, so as to divest the plaintiffs of their right.

On March 22, 1932, the interested parties, except the receiver in bankruptcy, who was afterwards made a party to the agreement, stipulated that the plaintiffs should withdraw their notices of stoppage in transitu

given by them and not interfere with the delivery of said lumber to the respective consignees, and the invoices for such shipments should be sent to the respective consignees, and the proceeds to be derived therefrom, if and when received, should be turned over and delivered to the bank as trustee for the parties thereto, and should be held and disposed of by the bank as such trustee in a special trust fund. The stipulation further provided: ''The moneys in and composing said trust fund shall, to all legal intents and purposes, stand and be in lieu of said lumber and in lieu of any rights or interests in the same or the proceeds thereof, and each and every party hereto shall have such right to and interest in said trust fund as such party had or might or could have lawfully claimed, asserted or established in or to said lumber, or any part thereof, or in or to any part of the proceeds thereof, by stoppage in transitu, replevin, claim and delivery, action in assumpsit, action for money had and received, action for trover and conversion, or by any other form of suit, action or proceeding whatever, in any court of competent jurisdiction or otherwise.''

After mature deliberation we are of the opinion that the stipulation renders it unnecessary to consider the question of the right of stoppage in transitu, although the same is thoroughly briefed by the parties. The inquiry is, under the stipulation, which of the parties is entitled to the lumber, or the proceeds thereof?

The shipments of lumber here involved were interstate shipments and are governed by the United States statutes. U. S. C. A., Title 49, § 82, p. 390, defines a straight bill of lading as follows: ''A bill in which it is stated that the goods are consigned or destined to a specified person is a straight bill.'' Section 83 defines

an order bill of lading thus : "A bill in which it is stated that the goods are consigned or destined to the order of any person named in such bill is an order bill.   *   *   *"" Section 109 reads : ""*   *   *   A straight bill can not be negotiated free from existing equities, and the indorsement of such a bill gives the transferee no additional right." Section 112 provides, in part: "A person to whom a bill has been transferred, but not negotiated, acquires thereby as against the transferor the title to the goods, subject to the terms of any agreement with the transferor.   *   *   *""

In the present case, in one instance pertaining to a parcel of lumber, a straight bill of lading was issued and assigned to the bank. If a straight bill of lading is subject to the terms of the agreement with the transferor, then it necessarily follows that the transfer of documents, usually issued prior to a bill of lading, such as an invoice or copy of invoice, would confer no greater right.   Therefore, under the United States statute, which was enacted for the purpose of settling the rights of parties in such transactions so far as possible, any right or assignment from the Henry D. Davis Lumber Company to the defendant bank would be subject to the agreement between the different sellers with the transferor, the Henry D. Davis Lumber Company.

■ The voluntary assignment of the invoices, or copies of invoices, or attempted assignment of the shipments of lumber to the government of the United States, was illegal and void and of no force or effect. The United States statute provides :

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor,   *   *   * shall be absolutely null and void, unless they are freely made and executed in the presence of at least

two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a wararnt for the payment thereof. Such transfers, assignments, * * * must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, * * * to the person acknowledging the same. * * *'' § 203, Title 31, U. S. C. A. (§ 3477, Rev. St. of U. S.).

This statute plainly provides that claims against the United States are not assignable until after the allowance of the claim, the ascertainment of the amount due and the issuing of a warrant for the payment thereof, and such transfers or assignments must recite the warrant for payment and must be acknowledged before an officer authorized to take acknowledgments of deeds and certified by the officer. The attempted assignments from the Henry D. Davis Lumber Company to the appellant bank were made long prior to the allowance of the claims by the government, prior to the ascertainment of the amounts due, or the issuance of warrants in payment thereof, were not witnessed or acknowledged, and did not recite the warrant for payment. At that time there was nothing due the Henry D. Davis Lumber Company from the United States.

It is contended by defendant that this provision only applies as between the assignee of such claims and the United States. The statute does not make such purported assignments voidable or void as to third parties, but makes them ''absolutely null and void'', ''whatever may be the consideration therefor''.

This question is set at rest by the opinion in the case of *National Bank of Commerce v. Downie*, 218 U. S.

345 (31 S. Ct. 89, 54 L. Ed. 1065, 20 Ann. Cas. 1116), where the specific section above quoted (§ 3477, Rev. Stat. of U. S.) was thoroughly discussed and explained. It was contended in one case therein mentioned, as in the case at bar, that the act had reference only to claims asserted before the treasury department. That view was rejected. The act was held to be of universal application and covered all claims against the United States in every tribunal in which they may be asserted. The court said:

"We cannot say, when the statute declares all transfers and assignments of the whole of a claim, or any part or interest therein, and all orders, powers of attorney, or other authority for receiving payment of the claim, or any part thereof, shall be absolutely null and void, that they are only partially null and void, that they are valid and effective as between the parties thereto, and only invalid when set up against the government. It follows that, in our opinion, the accepted orders under which the appellant claims gave him no interest in the claim of the drawer against the United States, and no lien upon the fund arising out of the claim."

In the case of *First Nat. Bank v. U. S. F. & G. Co.*, 127 Or. 147, 164 (271 P. 56), this court held that section 3477, Rev. Stat. of U. S., will not be permitted to defeat the enforcement of an agreement between the plaintiff and the surety company. The facts in that case were different from those in the case at bar. We feel bound by the construction so plainly given by the United States Supreme Court to the federal statute in the case of *National Bank of Commerce v. Downie,* supra.

■ We conclude that except as to the Bremerton shipment, the assignment of the invoices, or copies of invoices, was of no force and that the lumber having been sold upon the condition that the price thereof would be paid upon receipt of documents, and the invoice, with the other documents, was received by the

buyer, but payment was not made, title never passed as between the original parties, or as between the plaintiffs and third parties, who were in no better position than the original buyer. Neither of the appellants is in any better position than the original buyer. Each of them stands squarely in the original buyer's shoes. To hold that the bank is in any better position than the original buyer would be to utterly disregard the statutes of this state and the federal statutes. We think the matter is governed by positive law. The plaintiffs had an absolute right to reclaim the lumber, except parcel 7, or recover the proceeds thereof.

■ Much stress is laid by counsel for the appellant bank on a letter dated March 8, 1932, written to the Henry D. Davis Lumber Company by the assistant treasurer of the Weyerhaeuser Timber Company, dunning the Henry D. Davis Lumber Company, wherein he states that "you will realize * * * that at no time was it our intention to extend credit". The letter states that "we allowed you time within which to negotiate your papers or prepare your papers". Evidently the word "negotiate" was used, as explained by the following words, "or prepare your papers". The word "negotiate" could not be applicable for the reason that the papers pertaining to the lumber were not negotiable and could not be negotiated. Plaintiffs never intended to extend credit to the Henry D. Davis Lumber Company, but refused to do so.

Counsel for the appellant bank complains bitterly because we did not discuss all of the authorities cited in its brief. The main trouble with the authorities is that they do not apply to the facts in this case, and to mention them all would extend this memorandum to too great length.

Upon the question of showing the meaning of "cash sales", the case of *Stanfield v. Arnwine,* 102 Or. 289

(202 P. 559), is cited by defendant, where a contract was made for the sale of lambs of "good size and merchantable condition". The quoted words are very general and obviously subject to explanation. The contention of defendant in this case that "cash sales" means a short-term credit would preclude the defendants from denying credit to the Henry D. Davis Lumber Company, when it questioned its financial responsibility. Plaintiffs had the right to make the contract.

■ Counsel for appellant bank refused to notice any difference between the Bremerton shipment and the other shipments, although it is in its favor. As shown in our former opinion, the complaint of plaintiff indicated this shipment to be delivered F. A. S. Everett, Wash., for shipment by scow to said buyer (Henry D. Davis Lumber Company). The invoice of this shipment from the Weyerhaeuser Timber Company to Henry D. Davis Lumber Company showed that the lumber was to be shipped to Henry D. Davis Lumber Company, Bremerton Navy Yard. The lumber was so shipped and sold; therefore, the Weyerhaeuser Timber Company having assented to such shipment, we considered it an evidence of an act of ownership and dominion over the lumber by the Henry D. Davis Lumber Company. None of the other shipments of lumber were invoiced in this manner.

The sum of $1,890.36 should be deducted from the judgment and decree of the trial court on account of the Bremerton shipment of lumber. The interest allowed by the trial court should also be deducted.

With these modifications or deductions mentioned, the decree of the circuit court is affirmed.

Each party will pay his or its own costs and disbursements in this court.

RAND and BAILEY, JJ., concur in the result.