Argued May 22, affirmed July 6, petition for rehearing denied
September 5, 1951

## TYLER *v.* KELLEY TIMBER PRODUCTS CO., INC., and TOMPKINS and EISSLER

233 P. 2d 774

## JAMES *v.* KELLEY TIMBER PRODUCTS CO., INC., and TOMPKINS and EISSLER

233 P. 2d 777

*Edward E. Sox,* of Albany, argued the cause and filed a brief for appellants.

*Mark Weatherford* argued the cause for respondent. With him on the brief were Morley & Thomas, of Lebanon, and Weatherford & Thompson, of Albany.

Before BRAND, Chief Justice, and HAY, LATOURETTE and WARNER, Justices.

LATOURETTE, J.

This is an action brought by plaintiff-respondent in replevin to recover 245 logs from the Kelley Timber Products Co., Inc., (hereinafter referred to as the "Kelley Company"), Wendell H. Tompkins, assignee of a mortgage given by the above company, and one Eissler, receiver appointed in the mortgage foreclosure proceedings.

The case was tried to the court without a jury; findings, conclusions and judgment were given in behalf of plaintiff, and Tompkins and Eissler appealed, a default and judgment having theretofore been entered against the said Kelley Company. The point involved on the appeal is whether or not there was substantial evidence to sustain the findings of the court that title to the logs did not pass to the Kelley Company from

plaintiff at the time plaintiff delivered the logs to the said Kelley Company.

Plaintiff, together with his father, felled and bucked some timber belonging to plaintiff's father near Lebanon. Over a course of months plaintiff delivered logs to the Kelley Company, which had erected a sawmill some miles from the farm on which the timber was felled and bucked.

A partnership composed of H. Friedlander and L. Laster, of New York, doing business as the Woodex Lumber Company, originally advanced some $6,000.00 to Phillip Kelley and Kenneth B. Kelley, father and son, who were operating a sawmill as a partnership, in return for which the Kelleys turned over to them the output of the mill. Subsequent thereto, at the instance of Friedlander and Laster, the Kelley partnership was incorporated as Kelley Timber Products Co., Inc., and all of its corporate stock was transferred to the Woodex Company which placed a man by the name of McNeil in charge of the said Kelley Company under the title of "comptroller." Thereafter all the funds, management and transactions of said company were controlled by the Woodex Company, Kelley and his son being made employees of said company.

The Woodex Company then caused the new Kelley Company to issue a mortgage to it covering the mill and all lumber and logs which belonged to said company, and which should thereafter be acquired by it, said mortgage to be security for advances theretofore made and to be made by the Woodex Company.

Loggers in the Lebanon vicinity, including plaintiff, who were dealing with the Kelley Company, believed they were dealing with the Kelley partnership, and did

not know that the Woodex firm had the affairs of the Kelley Company sewed up lock, stock and barrel.

Plaintiffs and others began delivering logs to the Kelley Company and for a time were paid for the logs so delivered by them. Thereafter the Woodex Company assigned the aforesaid mortgage to defendant Tompkins, who brought foreclosure proceedings and procured the appointment of Eissler as receiver under the mortgage. The record shows that at that time there were a number of creditors of the Kelley Company who were in the same business as plaintiff, whose unpaid claims aggregated some $30,000.00.

During the course of the proceedings the receiver sold the logs in question and holds the money derived therefrom, awaiting orders of the court.

The situation which prompted the present law suit was the failure of the Kelley Company to honor a check issued by it to plaintiff for the purchase of the logs aforesaid. The question before us is whether or not the transaction between plaintiff and the Kelley Company was a cash or a credit transaction. If a cash transaction, title to said logs, under the law, would not pass and would remain in plaintiff, and he would be entitled to prevail in the present case. If for credit, his action would not lie. *Johnson v. Iankovetz,* 57 Or. 24, 102 P. 799, 110 P. 398; *Weyerhaeuser Co. v. First National Bank,* 150 Or. 172, 38 P. (2d) 48, 43 P. (2d) 1078.

There was no written contract between the parties, nor was any evidence adduced as to the nature of the full transaction between him and the Kelleys. The only evidence given is that the price for the logs was "$29.00 and $27.00 per thousand," and that payments were to be made every two weeks, the agreement being evi-

denced by the following brought forth on cross examination:

"Q Mr. Tyler, you first delivered logs in April under a contract to pay you $29.00 a thousand, is that right?

"A Yes, sir.

* * *

"Q And you were working on an arrangement where you would pick up your check every two weeks, is that right?

"A Yes."

After the check in payment of the logs involved in the present case was dishonored, plaintiff and his father went to the mill yard of the Kelley Company and identified the logs which they had delivered, the same being piled on a side road where they had been theretofore unloaded by plaintiff. While they were there, Mr. Eissler, the receiver, arrived. The son testified that the receiver wanted to know what they were doing, whereupon the son replied, " * * * I told him that we was scaling our logs, it was our property, and we was looking out for it." As to the receiver's response thereto, plaintiff testified, "Well, he didn't say too much. He just walked off, didn't say much of anything."

It is the contention of the appealing defendants that the logs were not to be paid for until two weeks after delivery; therefore, this, in itself, makes the transaction one for credit rather than for cash, especially since there was no evidence in the case that the transaction was a cash deal. Section 71-142, O.C.L.A., (Uniform Sales Act) reads as follows:

"Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions; that is to say, the seller must be ready and willing

to give possession of the goods to the buyer in exchange for the price and the buyer must be ready and willing to pay the price in exchange for possession of the goods."

In 46 Am. Jur., Sales, 645, § 478, we read:

"The fact that the check received for goods was not delivered simultaneously with the delivery of the goods to the buyer, but a short time thereafter, does not show that the sale was upon credit; it does not conclusively prove a total abandonment of title and right of possession by the seller, unless, under all the circumstances of the case, it appears that such result was intended."

In the Weyerhaeuser case, supra, we said:

"* * * Defendant company was entitled to a sufficient time to assemble the documents, examine the invoice to see if it conformed to their order, examine the mate's receipt to see that it covered the lumber, and the certificate of inspection, or P. L. I. B., to ascertain if it was in proper condition.

"Where the seller gives the purchaser a short time for such purpose, it is not an extension of credit; it is a courtesy and not a right under the contract."

Cited in the Weyerhaeuser case is *Dows v. Dennistoun*, 28 Barbour's (N. Y.) 393, a case wherein cash was to be paid within ten days after delivery. The court there held that there was a qualified delivery, and that there was no absolute transfer of the title to the property where the purchase price was not paid.

■ Since there was no direct evidence as to whether the sale of the logs was for cash or for credit, in addition to the statutory presumption of a cash agreement, we must look to the circumstances of the case to determine what result was intended. Quoting from the Weyerhaeuser case, we find at p. 211, " 'If the agree-

ment does not provide in express terms that payment shall be made on delivery and no provision is made for credit, the intention of the parties must control.' "

A transaction involving the sale and periodic delivery of logs is vastly different from a sale over the counter of stock in trade. As said in the Weyerhaeuser case at p. 194, "In the sale of cumbersome articles like lumber, it can not be delivered and collection made therefor in the same manner as goods are sold over the counter."

■ Plaintiff and others were making intermittent delivery of logs to the Kelley Company's premises. It could not be expected, nor was it contemplated, that on the delivery of each batch of logs the parties would run to the comptroller to collect their money. The evidence discloses that the comptroller was the only one with authority to pay out funds and then only with the consent of the mortgagees, Friedlander and Laster (who were in New York). There was scaling to be done, bookkeeping to be accomplished, and other matters involved in present-day logging and sawmill operations, which all consumed time, and the fact that plaintiff was to pick up his check every two weeks did not conclusively establish a credit transaction.

We find no merit in the other assignments of error presented by defendants.

■ This case presented a question of fact for the trial court to determine under all the circumstances in the case. Since the lower court found that the transaction was a cash and not a credit transaction, and there being evidence in support thereof, we are not at liberty to disturb such finding. Affirmed.

Appeal from Circuit Court, Linn County.

FRED MCHENRY, Judge.

*Edward E. Sox,* of Albany, argued the cause and filed a brief for appellants.

*Mark Weatherford* argued the cause for respondent. With him on the brief were Morley & Thomas, of Lebanon, and Weatherford & Thompson, of Albany.

Before BRAND, Chief Justice, and HAY, LATOURETTE and WARNER, Justices.

AFFIRMED.

LATOURETTE, J.

We have this day rendered an opinion in *Tyler v. Kelley Timber Products Co., Inc., et al.* That case and the present case were consolidated and argued together before the court. The facts are practically the same, and the legal question involved raises the same point of whether the James deal was one for cash or for credit.

The opinion in the Tyler case is controlling in the case at bar. Affirmed.